AGUSTÍN, ANA MARÍA, EDUARDO, and CONSUELO VÉLEZ CORDERO, Plaintiffs and Appellees, *v.* JOSÉ M. MEDINA and ELÍAS NAJUL BEZ, Defendants and Appellants.

No. R-68-327.     Decided May 27, 1970.

*Vicente Géigel Polanco* and *Vicente Géigel Lanuza* for appellants.

*Miguel A. Juarbe* and *Baltazar Quiñones Elías* for appellees.

MR. JUSTICE TORRES RIGUAL delivered the opinion of the Court.

Agustín Vélez Cruz acquired in the year 1919 the parcel of land object of the instant litigation, by exchange for another separate property belonging to him. Agustín was married at that time to Generosa Cordero Rosa. The exchange transaction was duly recorded in the Registry of Property.

In 1924, the matrimonial ties between them were dissolved, Generosa remaining with the use and enjoyment of the property for herself and the children had in the marriage, until her death in May 1963.

In June 1963 Agustín sold the property to appellants, José M. Medina and Elías Najul Bez, by public deed, which appears recorded in the Registry of Property. On account of this sale, the successors in interest of Generosa, also children of Agustín, commenced the instant litigation in the Superior Court, Aguadilla Part, alleging that the property was in part community property, since Agustín had paid in the exchange the amount of $660.50 from funds belonging to the conjugal partnership and that Generosa had possessed the property as owner, quietly, publicly, and peacefully, for more than 30 years, for which reason she acquired by extraordinary

prescription "any participation which might correspond to defendant, Agustín Vélez Cruz."

The trial court rendered judgment annulling the sale of 1963 and its recording in the registry, and granting ownership title of the property in question to appellees, concluding, insofar as pertinent: (a) that Agustín acquired the property while being married to Generosa, by exchange for another of his separate property, and returned the amount of $660.50 in cash of community origin; (b) that the property was owned until August 21, 1924 by private title in part, by Agustín, and community property in part, by the conjugal partnership between Agustín and Generosa; (c) that Agustín sold the property in June 1963, to coplaintiffs José M. Medina and Elías Najul Bez, without the consent or approval of Generosa or of her heirs; (d) that since August 21, 1924, date on which the marriage was dissolved, until May 31, 1963, date on which Generosa died, the latter, personally or through her tenants, possessed as owner, quietly, publicly, and peacefully, the property object of this litigation; (e) that every right, interest or participation which Agustín could have had in the property object of this litigation was acquired by Generosa and her heirs by virtue of extraordinary prescription.

Feeling aggrieved by said judgment, appellants request us to reverse it, alleging the commission of several errors. We agree that the judgment is erroneous and that the same should not prevail, for the grounds which we shall set forth hereinafter.

It is not necessary to consider the assignment which challenges the finding of fact of the trial court, that in acquiring the property Agustín paid the difference in value with funds originating from the conjugal partnership. Whatever the finding in one sense or the other—that Agustín was the one who paid the difference, since his property was of a lesser value than the one which he acquired, or that it was

Agustín who received the payment in his favor because his property was more valuable—the separate character of the property acquired by exchange would not vary.[1]

█ The error of the court, precisely, consists in deeming that this fact altered the separate character of the property acquired by Agustín, by exchange, conferring on it a double character: separate in the proportion of the value of Agustín's original property, and, community, in proportion to the funds of the conjugal partnership invested in the exchange. Such determination is erroneous, since property acquired by exchange for other separate property never lose their separate character. The character of the original title—community or

---

[1] Appellants' contention is that, contrary to the finding of the trial court, the evidence establishes that it was Agustín who received a payment of $660.50 for the excess in value of his property.

The only evidence about this fact consists of deed No. 144, executed before Notary Mariano R. Acosta, on November 24, 1919. The text of said deed is excessively contradictory and, actually, it does not give any ground to reach any conclusion. In the second paragraph it is stated that the property acquired by Agustín from Eladia de la Rosa López has a value of $1,773. In the third paragraph it is stated that the property which Agustín conveys in exchange to Eladia has a value of $1,112.50. Up to here it is clear that Agustín's property had less value and, therefore, he paid the excess of value with funds originating from the conjugal partnership. However, in the fifth paragraph the contrary is stated.

"Fifth:—And it having been thus agreed by the appearing parties herein, they exchange the consolidated and segregated parcels of land; and by virtue thereof, Eladia de la Rosa acquires the twenty-nine and forty-six hundredth cuerdas described in the fourth fact, and Agustín acquires the fourteen and twenty-five and a half hundredth cuerdas consolidated and described in the second fact, *and the former having been valued at one thousand seven hundred and seventy-three dollars, and the latter at one thousand twelve dollars and fifty cents, Eladia paid the difference in price of six hundred sixty dollars and fifty cents to Agustín,* which amount he confesses having received before this act, to his satisfaction, from that lady, in whose favor he grants receipt, and both convey among themselves the properties exchanged, with all their uses, customs, servitudes, and other inherent rights, being bound one another to the defense of title, pursuant to law." (Italics ours.)

Be that as it may, the finding of the court about this fact does not alter the separate character of the real property acquired, as we set forth in the text of this opinion.

separate—is maintained by subrogation in the properties acquired, irrespective of the difference in value between one and the other. The conjugal partnership, in case that any money has to be paid in excess, would only have credit against the acquiring spouse. IX Manresa, *Comentarios al Código Civil* 662 (6th ed.); XXII Scaevola, *Código Civil* 299 (2d ed.); V-I Castán, *Derecho Civil Español, Común y Foral* 270 (8th ed.).

To that effect, Manresa states:

"If the property acquired by exchange is more valuable than the one delivered, the conjugal partnership will have to pay the difference in cash. That cash may originate from the husband's or wife's separate capital or from the community property. *Should it be understood that the excess in value of the property, that is, the undivided participation which it represents belongs to the one from whom the cash comes? We do not think so.* First, because Art. 1.337, without distinguishing, provides that, in case of exchange, the property acquired substitutes the one that was delivered, and has, as the latter, a dowry character. Second, because the law repels undivided ownership, and the undivided ownership would result if the excess in value of the property exchanged would belong to the husband, or to the community property. But as it would be unjust for the wife to enrich herself at the expense of the husband, or of the partnership, and since to disregard the origin of the cash would be tantamount to consent donations among the spouses during the marriage, from the exchange in the case set forth, a credit in favor of the person or entity who facilitated the cash is inescapably created, not being the wife, whose credit has to be taken into account in due time, when the liquidation of the conjugal partnership is performed. If the excess was paid with funds from the dowry, there is no question." IX Manresa, *Comentarios al Código Civil Español* 345. (Italics ours.)

On the other hand, if we would admit the trial court's determination as to the dual character of the property, the extraordinary prescription in benefit of Generosa would not lie either. Under that assumption, Generosa as well as Agustín would be coproprietors of the property.

■ As is known, it is a fundamental principle of community property that the acts of an owner in common, or coproprietor, benefit or prejudice the rest. The possession by one of them, as owner, benefits the community and not the owner in common, exclusively, as he possesses, not for himself but in representation of the rest. It is thus expressly established in § 1833 of the Civil Code:

"Prescription acquired by a coproprietor or owner in common benefits all the others."

Therefore, if the conjugal partnership was coproprietor of the property, together with Agustín, when the partnership was dissolved by the divorce, Generosa became owner in common, and by virtue of the cited § 1833, her presumptive possession benefited also Agustín, as she could not acquire the latter's participation through the extraordinary prescription.

But, as this determination of the court is not correct, and on the contrary, we have established that the property is of separate nature, Generosa could very well acquire it by extraordinary prescription, possessing it as owner for more than 30 years. Section 1859 of the Civil Code, 31 L.P.R.A. § 5280. This leads us to consider another of appellants' assignments in relation with the nature of the possession exercised in the property by Generosa.

■ The trial court concluded that Generosa's possession was as owner. There is no doubt that the acts which she performed in the property, such as planting, leasing it, and paying taxes, are external acts of enjoyment and use which are usually performed by the actual owner. Generally, said acts give reasonable ground to the rest of the community to consider that the one who exercises them is the actual owner. It is precisely this general or public belief what attributes to the possession the concept of owner, independently of the belief which the possessor himself may have on the matter.

*Dávila* v. *Córdova,* 77 P.R.R. 125 (1954), IV Manresa, *op. cit.* at 83.

Now, well, from the uncontroverted evidence it appears that Agustín acquired the property in 1919, while being married to Generosa; that both lived with their children, appellees herein, on the property until 1924, date on which the marriage was dissolved; that Generosa continued living on the property, moving later to Santurce, and leasing it to different persons.

■ From the foregoing it is evident that Generosa came to live at the property in her capacity as wife of Agustín. The acts of enjoyment and use which she may have exercised on the property at that time were performed by her in such capacity, and therefore, in representation and in the name of Agustín. In our code of laws, the possessory acts which are exercised in representation or in the name of another are not effective to acquire ownership by extraordinary prescription, because they are not exercised for oneself but for another, and lack the intent of possessing the thing as one's own, essential element of the extraordinary prescription. Sections 360, 376, and 1841 of the Civil Code, 31 L.P.R.A. §§ 1421, 1462, and 5262.

■ When the matrimonial bond was dissolved, her condition as tenant at sufferance continued by pure presumption of law. Section 365 of the Civil Code establishes it thus:

"It is presumed that possession is continued under the same understanding by which it was acquired, until the contrary be proven."

The state of tenant at sufferance is not transformed by the mere will of the wrongful occupant. III Planiol and Ripert, *Tratado Práctico de Derecho Civil Francés* 162 (1942 ed.); II-2 Colin and Capitant, *Curso Elemental de Derecho Civil* 523 (1952); Guaroa Velázquez, *Derechos Reales Principales* 289. As Planiol and Ripert state, the state of

sufferance is perpetual because of its own nature, and, in principle; it subsists indefinitely. *Id.*

■■ The rule recognizes, however, that the tenant at sufferance may inverse his title, substituting the possession as tenant at sufferance by that of possession as owner. IV Manresa, *op. cit.* at 109, 110; Colin and Capitant, *op. cit.* at 524, 525. The inversion or interversion of title may be performed only in two manners:

(a) By a cause originating from a third party, as would happen, for example, if the owner dies and the tenant buys the real property from a person who wrongfully passes as heir of the owner and stops paying the rent.

(b) By the contradiction opposed to the owner's right that operates when the lessor refuses to return the real property, claiming to be the owner. Planiol and Ripert, *op. cit.* at 163, Guaroa Velázquez, *op. cit.* at 290.

It may be seen that in both manners of interversion of title there is an external change in the conduct of the possessor in stopping to pay the rent. It is not a simple denial of the owner's right by the tenant at sufferance.

■ There is nothing in the evidence of the instant case to indicate that there is an interversion of title. On the contrary, it appears that when the marriage was dissolved, Generosa continued withholding the material possession of the property, wrongfully, without any act or new title mediating that could indicate a change in the cause and the principle of her possession which, as we have seen, was of the nature of a tenant at sufferance. Appellants' mere statement that Generosa was the owner is not sufficient to overcome the efficacy of the presumption established in the cited § 365.

The judgment rendered by the trial court will be reversed.

Mr. Chief Justice Negrón Fernández did not participate herein.